John E. Hoey, Plaintiff, *v.* William J. Dalton and Others, Composing the City Council of the City of Long Beach, and the Mayor, Defendants.

Supreme Court, Kings County, December 17, 1925.

**Municipal corporations — complaint in taxpayer's action, under General Municipal Law, § 51, amended nunc pro tunc under Civil Practice Act, § 105, to show that plaintiff had paid taxes in excess of $1,000 — plaintiff permitted to file bond nunc pro tunc — mayor of city of Long Beach under charter (Laws of 1922, chap. 635), § 71, is not entitled to reasonable time within which to exercise veto power.**

The complaint in a taxpayer's action, brought under section 51 of the General Municipal Law, may be amended *nunc pro tunc*, under section 105 of the Civil Practice Act, so as to allege that the plaintiff has paid taxes or assessments in excess of the sum of $1,000 within one year prior to the commencement of the action. Likewise, the court may permit the filing of a bond *nunc pro tunc*.

The mayor of the city of Long Beach, under section 71 of the charter (Laws of 1922, chap. 635), is not entitled to a reasonable time within which to exercise the veto power, no time being given by the charter, and, therefore, the publication of a resolution adopted by the city council, authorizing the operation of a motor bus line, will not be suspended pending the exercise of the veto power by the mayor.

APPLICATION to enjoin the city council from finally approving applications, consents or franchises for the operation of motor bus lines in and through certain streets and highways in the city of Long Beach.

*Underhill & Rubinger* [*Maurice Rubinger* of counsel], for the plaintiff.

*David B. Tolins, Corporation Counsel,* for the defendants.

LEWIS, J.   The sufficiency of the complaint is attacked on the ground that it fails to set forth that the plaintiff has paid taxes or assessments in said city of Long Beach in excess of the sum of $1,000 within one year prior to the commencement of this action.   The complaint does state that the plaintiff was a taxpayer.   The court is of the opinion that in view of the liberal provisions of section 105 of the Civil Practice Act it has the power to permit the correction to be made *nunc pro tunc.*   Likewise, with reference to the filing of the bond required by the General Municipal Law (§ 51), the court will permit the filing of a bond in the sum of $250 *nunc pro tunc.*

A meeting of the mayor and the city council of the city of Long Beach was held on the evening of December 11, 1925, at which a resolution was adopted reciting, in substance, that a certain application had been made by one Seagraves addressed to the mayor and the council of the city of Long Beach for their consent to permit him, or his assigns, to operate a motor bus line through certain streets and highways.   Thereupon at the meeting it was resolved that a public hearing be had at the city hall of the city of Long Beach on said application on Tuesday, December 15, 1925, at six-thirty P. M., and that notice of such public meeting be published in the *Long Beach Life* in its issue of December 12, 1925.   A vote having been taken, four city councilmen voted in the affirmative, and I will assume for the purpose of this opinion that the mayor did not vote thereon.   I will likewise assume that the mayor instructed the city clerk to furnish him with copies of the resolution for his consideration, and that he announced to the council that he reserved decision in order to determine whether he would approve or veto the resolution.   The same procedure was followed with reference to another resolution respecting the application of one J. Bruce Robertson for permission to operate a motor bus line

through certain other streets, which also provided for publication on December 19, 1925, the mayor likewise not voting and reserving his decision as to whether he would veto or approve the said resolution.

The charter of the city of Long Beach (Laws of 1922, chap. 635) provides (in § 71): "The mayor shall preside at all meetings. He shall have power to veto any motion, resolution or ordinance. Any such motion vetoed by the mayor may be passed by the council by a four-fifths vote over his veto, and the same shall be carried and enacted as though it received the mayor's affirmative vote and signature."

It is the contention of the plaintiff that there being no time specified within which to exercise the veto power, the mayor had a reasonable time in which to do so, and that in the meantime the resolution providing for the publication was suspended. No authority has been furnished by counsel, and the court, within the few hours given it for consideration, has been unable to find any case even analogous to the situation, nor has it been able to perceive much reason for the implication of a reasonable time. The implication of reasonable time is indulged in respecting matters of contract affecting private individuals, but it seems to me that it would be fraught with serious consequences to extend it to actions of public officials, so clearly political in nature as the manner of exercising the veto power. And especially so in view of the abuses and disorder which history shows have attended the "pocket veto" under pretense of consideration. (Rawle's Bouvier's Law Dict. *v.* veto; *People ex rel. Churchyard* v. *Board of Councilmen*, 20 N. Y. Supp. 51; affd., on opinion below, 135 N. Y. 660.) There, in an interesting opinion reviewing some of the history of the veto power, Hatch, J., says: "The veto power was regarded with great distrust and disfavor by the framers of our government, both state and national, and its right of exercise is by no means universal now. * * * This history, and these illustrations, serve to show that the people of all constitutional governments are extremely solicitous and jealous of this power, and have at all times hedged it about by carefully expressed limitations. Consequently it follows that the right of its exercise by an executive must always be supported by plain and undoubted authority. * * * While, for these and other reasons, it is doubtless the tendency of modern legislation to bestow this power upon the executive head of municipal government with much liberality, yet it is equally true, and always to be borne in mind, that the power must be express or necessarily implied, and without it, it does not exist."

The mayor concededly was present at this meeting. The only

question before it was the publication of a notice for a public hearing. It was a special meeting, which the charter prescribes by section 72 must be preceded by twelve hours' notice, specifying the object of the meeting. The mayor, therefore, had the time for deliberation prior to the meeting. The court is without power to read into a statute, such as this city charter, words which are not found therein, and it cannot legislate to enlarge a statutory power. To say that the veto may be exercised within a reasonable time would be enlarging the power. To do so might work serious injury or injustice to the municipality itself, for delay in action by the mayor under certain conditions might deprive the people of the municipality of rights which might be lost or other things requiring immediate action and decision, and would· invite similar applications on all resolutions affecting the government of the city, and in each case the court would be required to determine the reasonable time to which the mayor is entitled for the purpose of approving or disapproving of the motions, resolutions or ordinances of the city council. Legislative bodies should not be enjoined unless the applicant shows a clear legal right to injunctive relief.

The motion is denied.