WILLIAM EITH, Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, Special Term, New York County, November 22, 1937.

*Bernstein, Ellis & Kilroe* [*Seymour Kempner* of counsel], for the plaintiff.

*Allin, Tucker & Allen* [*George L. Allen* of counsel], for the Cudahy Packing Company.

*Paul Windels, Corporation Counsel* [*William J. Mulligan, Jr.,* and *Robert W. Lishman* of counsel], for the defendants other than Cudahy Packing Company.

PECORA, J.  The present motion is for a temporary injunction to restrain the city of New York and its officials from constructing a building within Gansevoort square, which it intends to lease to the codefendant Cudahy Packing Company for a period of ten years with a ten-year renewal option.  A lease has already been entered into between the city and the Cudahy Packing Company, according to a resolution of the board of estimate and apportionment, and has been executed by the commissioner of the department of public markets, weights and measures.  It is intended to be used for a complete meat processing, packing and refrigerating plant at a yearly rental of approximately $40,000.  The rental is intended to be sufficient for the city to amortize the approximate cost of the building, namely, $400,000.  It is to be erected within the area surrounded by West street, Gansevoort street, Washington street and Little West Twelfth street, constituting a large block, and is to be 130 feet by 185 feet.  The plans have already been drawn and are before the superintendent of buildings of the borough of Manhattan.

A similar motion brought by another plaintiff, Manhattan Refrigerating Company, against the superintendent of buildings

as sole defendant (165 Misc. 29), and involving virtually the same state of facts, is before me, and will be separately considered by reason of certain technical considerations, but will be disposed of simultaneously with the instant motion.

 · The present action upon which the motion for a temporary injunction is based is brought by plaintiff in a dual capacity. In the first place plaintiff sues as a taxpayer who seeks to restrain the erection, financing and lease of the building on the ground that the construction is illegal, because the land on which it is to be built, under the law, is said to be dedicated exclusively to the use of farmers and market gardeners. The second cause of action sets forth that plaintiff, who is the owner of a farm in the city of New York, will be irreparably damaged if the building is erected, because as a result the use of the market place will be limited to about forty farmers and will prevent at least one hundred more farmers, including the plaintiff, from marketing their crops at the Gansevoort Market.

Certain preliminary technical objections to the first cause must be considered at the outset. Plaintiff, as an alleged taxpayer, has failed to file a bond as required by section 51 of the General Municipal Law. He may do so *nunc pro tunc.* (*Hoey* v. *Dalton*, 126 Misc. 194.) The second objection is that plaintiff has failed to show waste, it being urged that mere illegality of the course of the city officials is insufficient to justify the maintenance of a taxpayer's action, without a showing of waste. There is no indication, to be sure, of any financial waste on the part of the city authorities, nor is any such point urged. On the other hand, assuming, *arguendo*, that the proposed construction in the locality is contrary to law by reason of the violation of the restriction alleged, the proof of that fact alone would indicate a waste of public resources, since it is proposed to use for private purposes land dedicated for public farmers' markets which are established for the benefit of the purchasing dealer or consumer as well as for the farmer. The preliminary objections are, therefore, overruled.

The main issue raised by the papers is whether or not the land upon which the proposed building is to be erected is dedicated to farmers and market gardeners. Defendants argue that the original restriction imposed by act of Legislature has been repealed. In order to decide this it is essential to study the legislative history of that restriction from the time it was originally imposed. The earliest expression is found in chapter 191 of the Laws of 1880, which provides that " the lands situated in the ninth ward of the city of New York, and bounded on the north by Bloomfield street, on the south by Gansevoort street, on the east by West street and

Tenth avenue, and on the west by Thirteenth avenue and the block of ground in said city bounded by Gansevoort, Little West Twelfth, Washington and West streets and Tenth avenue, are hereby declared to be a public market place for farmers' wagons, whereon farmers and market gardeners bringing their farm and market produce to the city of New York in wagons may dispose of the same." Section 6 of that law provides in part that " the lands hereby set apart as a public market place shall be kept for the exclusive use of farmers and market gardeners."

For a proper understanding of subsequent legislative history it must be noted two adjoining plots of ground are involved in this statute. One refers to the lands bounded by Thirteenth avenue on the west, and West street and Tenth avenue on the east, referred to hereafter as the west tract. The other is the block mentioned herein as " Gansevoort Square," upon part of which the proposed Cudahy building is to be constructed. It is the east tract.

The restrictive provisions were, in effect, incorporated into the New York City Consolidation Act, being chapter 410 of the Laws of 1882, as section 129. That section was further amended by chapter 525 of the Laws of 1884. The effect of the amendment was this: That the west tract, while still dedicated to market purposes generally, was put under the jurisdiction of the commissioners of the sinking fund, either to lease the land for public market purposes or to prepare the same for use as a public market. The specific dedication of the east tract, on the other hand, as a public market place for the exclusive use of farmers and market gardeners, was reaffirmed. And that portion was put under the sole management and control of the finance department, to regulate the use of it for the sale of farm and garden produce. This statute emerged as section 163 of the Greater New York Charter, adopted in 1897 (Laws of 1897, chap. 378). ▌ The provision of the statute with reference to the west tract virtually remained unchanged. The clauses with respect to the east tract had an important proviso inserted, the meaning of which itself is the subject of controversy. As amended it read as follows: " The block of ground in said ward bounded on the north by Little Twelfth street, on the south by Gansevoort street, on the east by Washington street, and on the west by West street and Tenth avenue, is hereby declared to be a public market place, and *subject to the provisions of section two hundred and five of this act,* shall be kept for the exclusive use of farmers and market gardeners." The department of finance was still left in sole charge and control of it as to fees for stands and wagons, market hours and general management.

The controversial provision inserted is the phrase "subject to the provisions of section two hundred and five of this act." Section 205, thus mentioned, specifies the powers of the sinking fund board to sell or lease, for the highest marketable price or rental, at public auction or by sealed bids, any city property, except parks, wharves, piers and land under water. It is further provided — and this constitutes a limitation upon the power to lease for an unlimited term — that no lease shall be longer than for ten years or for a longer renewal period than ten years; and if such property be market property it shall be sold only pursuant to a resolution adopted by unanimous vote by the commissioners of the sinking fund, concurred in by the board of aldermen.

As originally adopted in 1897, that section, as to market property, provided that if the property was sold or leased, it was to be maintained by the purchaser or lessee as market property and for public market purposes for at least ten years after the sale or lease, unless otherwise ordered by the commissioners of the sinking fund and the municipal assembly. The present section, unchanged since 1913, is much simpler. In one respect it throws light upon the disputed proviso above referred to. There is no longer a requirement as to market property, that the purchaser or lessee shall maintain it as market property absolutely. The power to lease for a period of ten years and one renewal term, for any purpose, seems to be given absolutely to the commissioners of the sinking fund. The power to sell, however, can only be exercised by unanimous vote of the commissioners concurred in by the board of aldermen. The commissioners of the sinking fund are further given power to assign to use for any public purposes any city property which may be found by the department having control thereof to be no longer required for such purpose.

The practical construction of this section was given in 1905, when a corner of the Gansevoort Market block was required for a pumping station under control of the department of gas, water supply and electricity. The commissioners of the sinking fund unanimously voted to transfer this property to that department, and the board of aldermen unanimously approved the transfer. Thus it was construed by public officers that the provision as to the exclusive use of Gansevoort block for farmers or market gardeners could be annulled, at least as to a portion of that section, by the commissioners of the sinking fund. And the authority for such abrogation of dedication must be found precisely in the provision in section 163 of the Greater New York Charter, which made the dedication of Gansevoort Market for farmers and market gardeners "subject

to the provisions of section two hundred and five." This practical construction must be given weight in the interpretation of a statute which is not entirely free from ambiguity. It also helps to dispose of the contention of the plaintiff that the expression " subject to the provisions of section two hundred and five of this act " refers merely to the administrative powers of the sinking fund and its duty to administer and manage the market place. It means a great deal more, because it includes the power of alienation. The fact is that the administrative and management powers over the market place as it existed in 1905 at the time the commissioners of the sinking fund made the transfer, are fully covered by section 163 of the charter as it existed in 1905, whereby the department of finance had sole charge and control of that public market place and of the wagons employed in the business of selling farm and garden produce, and the general management of the market.

Thus far I have made no reference to the amendment of section 163 of the charter made by chapter 396 of the Laws of 1912. That amendment is another very vital phase of the controversy. By that statute the provision as to the dedication of both the west tract for market purposes and the east tract specifically for farmers and market gardeners, was entirely omitted. The provision left in was with reference to Wallabout farmers' market in the borough of Brooklyn and the control of the business of selling farm and garden produce in " said city." The expression " said city " is a defect in draftsmanship due to the fact that the first part of section 163, which contained a reference to the city of New York, was omitted. The last part, which refers to the control of the department of finance, was recopied from the old statute. There was a grammatical antecedent for the word " city," namely, " city of New York," in the old section, but by reason of the omission of the first part of that section it is absent from the new section. While it is not strictly relevant here, it may be inferred that section 163 left in the control of the department of finance the business management of all markets in the city and not merely Wallabout Market; otherwise there would be a hiatus in the matter of provision for the business management of public markets. Surely, it could not be construed that the sinking fund commissioners would thereafter continue to control the leasing of farmers' stands and other matters of detail, except as to Wallabout Market. Between 1912 and 1917, the time of the adoption of the Farms and Markets Law, Gansevoort Market undoubtedly continued to exist, and I assume, in the absence of any specific evidence to the contrary, that the department of finance continued to take charge of the details of administration in connection with that market.

I am postponing for consideration the important question of the effect of chapter 396 of the Laws of 1912 in order to take up the situation with relation to markets as it developed by reason of the passage of chapter 802 of the Laws of 1917. By section 74 of that statute, known as the " Farms and Markets Law," all the functions, powers and duties in respect to the management and control of public markets was transferred to the department of public markets.

The defendants argue that all the provisions of section 205 of the charter, so far as they involved the powers of the commissioners of the sinking fund over public market land, were transferred to the commissioner of public markets. I cannot accept that sweeping interpretation. It seems more rational to assume that the powers which the department of finance previously exercised over public markets were thus transferred to the commissioner of markets. Probably the right to lease for public market purposes was included in the transfer of powers, but surely not the right to sell. I regard section 205 of the charter as giving the commissioners of the sinking fund full power to dispose of market lands, whether by sale or lease and for private purposes, if they so decide; probably, as a matter of well-ordered administration, not on their own initiative, but on the recommendation of the department of public markets. But to assume that a sweeping power to destroy a public use for market purposes has been transferred by section 74 of chapter 802 of the Laws of 1917, now section 263 of the Agriculture and Markets Law, to the department of markets, is to give rise to this *reductio ad absurdum*. A commissioner of markets, theoretically, might, under such interpretation, lease away for private purposes all of the public market lands of New York and thus abolish the need for his own position. Surely it was not the intention of the statute to give the commissioner any such power. Consequently, I construe the effect of the Agriculture and Markets Law in transferring the functions of management and control of public markets to the commissioner of public markets as merely giving him authority of business management, without transferring to him the residual power of the commissioners of the sinking fund as the ultimate trustees of city property, to alienate land no longer needed for market purposes. It would seem that an efficient system of management and control by the markets commissioner should carry with it the power to lease for the limited terms given in section 205 of the charter to the commissioners of the sinking fund. But in interpreting the power of the commissioner to lease we must be careful to ascertain that the lease is for public market purposes; otherwise a lease which does not serve a public use will not be

promotive of the functions of the department of markets, but destructive of it and a usurpation of the powers of the commissioners of the sinking fund.

We now come to a discussion of the effect of chapter 396 of the Laws of 1912. On its face, by its omission of the reference to Gansevoort Market as dedicated to farmers and market gardeners, it would seem to have eliminated the restriction originally imposed by chapter 191 of the Laws of 1880. It is true that a repeal by implication is not favored, for when the Legislature intends to repeal an act it usually says so expressly. (*Matter of Tiffany,* 179 N. Y. 455, 457.) On the other hand, as is said in *Bock* v. *City of New York* (31 Misc. 55, 58), " An act which amends an existing statute ' so as to read as follows,' thereupon enacting a new and substituted provision, repeals all the former statute omitted from the act as amended. *Moore* v. *Mausert,* 49 N. Y. 332; *People ex rel. Sears* v. *Board of Assessors,* 84 id. 610." Chapter 396 of the Laws of 1912 is an amendatory statute enacted in the form just described, and it is, therefore, fair to conclude that the portion omitted from the old statute dealing with the exclusive dedication of Gansevoort Market was in effect expressly repealed.

Plaintiff argues very strenuously that the statute had no such effect, and gives two reasons: The first is a reference to section 24 of chapter 15 of the Code of Ordinances of 1915, published three years after the amendment of 1912, which specifically dedicates Gansevoort Market to farmers and market gardeners, subject to the provisions of section 205 of the charter. The ordinance is a repetition of the language of section 163. Defendants endeavor to explain it by showing that it was an inadvertent error of draftsmanship in bodily copying a repealed portion of section 163, repealed in 1912, and overlooking the fact that the dedication had been repealed by the laws of that year.

If such inadvertence occurred, as it probably did, it adds emphasis to the commentary of the New York City Charter Revision Commission in its Report on the Proposed Charter for the City of New York, filed August 17, 1936. The observation on page 5 of that report is particularly pertinent: " In the period of more than half a century which has elapsed since the Consolidation Act, the laws relating to the City of New York have grown haphazard in an overwhelming mass of statutes, without any system or arrangement. In this disorderly growth conflicts and inconsistencies have multiplied without number so that it is a matter of the greatest difficulty today to ascertain the law on any particular question affecting the government of the city. Neither the Charter of 1897 nor the

revision of 1901 now in force attempted to bring order out of this confusion. Each blindly continued all the existing laws, with all their obscurity, and neither made provision for their revision or codification."

But it is not necessary to draw this inference of inadvertence. After the amendment of 1912, Gansevoort Market still continued to be used as such, and the provision of the ordinance merely reaffirmed the fact that it should continue to be used for farmers and market gardeners, unless the sinking fund commissioners decided otherwise. That would be the meaning of the " subject clause." It does not mean, however, as defendants suggest, that upon the enactment of the Farms and Markets Law of 1917 this power to terminate was transferred to the commissioner of public markets. So it is not necessary to take the alternative and perhaps debatable view of defendants, that the ordinance must be deemed ineffective because it conflicts with the legislative enactment. It can be explained rationally, as I have endeavored to do, without resorting to such a violent conclusion and one not free from difficulty.

The other argument employed by the plaintiff to prove that it was not intended by chapter 396 to destroy the exclusive dedication of Gansevoort Market to farmers and market gardeners is based upon the consideration of chapter 427 of the Laws of 1912. That law was passed on April 16, 1912, and simultaneously with the enactment of chapter 396. It provides that the commissioners of the sinking fund may transfer to the dock department the property west of Tenth avenue and West street, referred to elsewhere in this opinion as the west tract, and also the Gansevoort block, or east tract, " provided that the city of New York shall have first acquired for the use of market purposes other property in the ninth ward of the borough of Manhattan of said city, at least equal in area to that now bounded on the north by Bloomfield street, on the south by Gansevoort street, on the east by West street and Tenth avenue, and on the west by Thirteenth avenue; and suitably improve same for a public wholesale meat, poultry, produce and dairy products' market; which such acquisition by said city for such said purpose is hereby authorized. Such acquisition of land and the use thereof for market purposes may be had in connection with the acquisition of land for terminal facilities."

There has been some misunderstanding by the parties both as to the literal interpretation of that statute and as to its effect. It is not true, as plaintiff argues, that the condition of the transfer of the lands was that an area equal to both the west and east tracts elsewhere in the ninth ward was to be dedicated for market pur-

poses. The law specifically limits the area of the new land to be acquired in exchange to a tract equal to the area of the west tract only. The statute also speaks of the Gansevoort block as lands " which are now and have heretofore been used for market purposes."

What is the significance of chapter 427 as an aid to the solution of the issue presented? Defendants attach little significance to it because the dock department never acquired the land, and, therefore, the proviso for finding other land in the ninth ward for market purposes never became effective. None the less, the law is on the statute books, passed simultaneously with chapter 396, and does in a peculiar way illuminate the significance of chapter 396 in the omission from that chapter of the previously existing provisions dealing with the dedication of the Gansevoort block as a market. A close reading of chapter 427 shows that the Legislature no longer recognized the Gansevoort block as dedicated *exclusively* for farmers and market gardeners. The omission of the word " exclusive " in reference to that block seems to be a recognition of the practical effect of the erection of such a structure as the pumping station built in 1905. Furthermore, in speaking of that block there is only a general reference to it as " one now and * * * heretofore * * * used for market purposes." That language is entirely insufficient to negative the conclusion that chapter 396 of the Laws of 1912 repealed the provision that Gansevoort Market was to be dedicated exclusively for farmers and market gardeners. The statement that the land is now and heretofore has been used for market purposes is merely a recognition of an existing situation which might continue indefinitely until the commissioners of the sinking fund chose to dispose of the land; it is not a recognition of the continuation of the exclusive dedication existing before. Nor is there any mandate that a definite area equal to that of Gansevoort Market must be devoted to farmers and market gardeners, or even for general market purposes. The area to be reserved is that equal to the west tract. What that area is does not appear in the papers before me. In any event, even if such a tract had actually been located elsewhere, it was to be used not necessarily for the exclusive purpose of farmers and market gardeners but for wholesale meat, produce and dairy products' market.

I believe that the inference to be drawn from chapter 427 as an indication of legislative purpose, even though its provisions were never acted upon, is, *first*, that the exclusive dedication of the Gansevoort block for farmers and market gardeners was repealed by chapter 396 of the Laws of 1912; *second*, that the Legislature

recognized that Gansevoort square might continue to be used for market purposes as heretofore until other provision was made; but there was no mandate that the area be used exclusively for that purpose. Nothing having intervened from the time of the passage of chapter 427 to transfer that land to the dock department, and the department of public markets having, during the interval, been intrusted by law with the management and control of it, what are the powers of that department over the area? While the exclusive dedication was repealed by chapter 396 of the Laws of 1912, such repeal was not equivalent to a declaration that it had to be transformed into property for private uses. As long as the department of public markets controls it it must be used for public market purposes; not necessarily for farmers and market gardeners, but for purposes belonging to the usual jurisdiction of the department of public markets. Nor does the statute necessarily exclude the erection of a building like the one contemplated, if such building will serve some public or quasi-public market purpose.

The plaintiff argues that his produce stand, as well as that of other farmers, will be destroyed by the proposed construction. Defendants show that only a fraction of the old area will be occupied by the building, and the old facilities existing for farmers and market gardeners will remain but little impaired. Under these circumstances a temporary injunction cannot be granted because of the absence of clear and convincing proof as to plaintiff's contention. While the application must be denied, this will be done with a proviso that the issues raised be set down for trial on December 13, 1937, at Special Term, Part III. The sharply-contested issues thus mentioned are, *first*, whether the proposed building is for public or quasi-public market purposes; *second*, whether it deprives the greater part of the area heretofore used for market purposes from being so used by the general public. A third issue which will have to be met at the trial is raised by the allegations in the companion case of *Manhattan Refrigerating Company* v. *Fassler* (165 Misc. 29); that is, the question of the right of the city to revoke the permit of the plaintiff in that action to maintain pipes under a portion of Gansevoort Market. The proposed building will compel the immediate removal of these pipes. Since in the accompanying opinion I have indicated my view that the two cases should be tried at the same time because of the existence of virtually a common state of facts, it will be necessary to consider the last mentioned issue at the trial, although it does not exist in the present motion.

The motion for an injunction is accordingly denied on condition that defendants stipulate to have the case tried at Special Term

on December 13, 1937, together with the issues raised in the companion case of *Manhattan Refrigerating Company* v. *Fassler*, provided that plaintiff therein complies with the direction contained in the disposition of the motion in that case to join the appropriate public officials as parties defendant.

Settle order.